IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUL 08 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

MARK ANTHONY ORTEGA
    Plaintiff,

v.

SENIOR LIFE INSURANCE COMPANY,
CAROLINE GALATI, DAVID CARTER,
AND ETHAN ERICH SMITH
    Defendants.

Case No. SA25CA0792

**PLAINTIFF'S ORIGINAL COMPLAINT**

**DEMAND FOR JURY TRIAL**

## NATURE OF THE CASE

1. This action seeks to stop Defendants Senior Life Insurance Company ("Senior Life"), Ethan Erich Smith ("Smith"), Caroline Galati ("Galati"), and David Carter ("Carter") from engaging in a persistent and illegal telemarketing campaign that bombards Plaintiff Mark Anthony Ortega ("Plaintiff" or "Ortega") with unwanted and harassing robocalls. Despite Plaintiff's repeated and explicit attempts to stop these calls, Defendants continue to call in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commerce Code, Chapters 302 and 305 ("Tex. Bus. & Com. Code"). The Defendants' calculated scheme uses illegally spoofed numbers and third-party lead generators to conceal their true identity and deceptively market their insurance products. This campaign has included calls where Defendant Smith directed obscenities at the Plaintiff, causing substantial harm in the form of invasion of privacy, frustration, anxiety, wasted time, and interference with his daily life.

## BACKGROUND ON THE TCPA

2. Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting

1

Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

3. Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. *See Omnibus TCPA Order,* 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015). The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

4. The TCPA specifically prohibits the use of automated telephone dialing systems or pre-recorded voice messages to make telemarketing calls to cellular telephones without the prior express consent of the called party. Additionally, the TCPA strictly forbids telemarketing calls to numbers listed on the National Do Not Call Registry. These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012)* (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

6. Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302 and § 305. While the Texas Business and Commerce Code, Chapter 302 and 305, is a state law, it complements and supplements the federal TCPA by providing

additional protections to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

7. In this instance, the claims under the Tex. Bus. & Com. Code § 302 and § 305, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the Defendant's alleged telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302 and § 305.

8. This Court has personal jurisdiction over all Defendants as they conducted business within this district and purposefully availed themselves of the privilege of conducting activities within the State of Texas. Defendant Senior Life targets Texas residents when marketing its services and regularly conducts business in this District, including via telephone solicitations. Defendants Smith, Galati, and Carter, acting as agents for Senior Life, directly participated in telemarketing calls to Plaintiff in this District. The illegal calls that form the basis of this lawsuit were received by and injured Plaintiff in this District, creating a direct causal link between the Defendants' conduct, the forum, and the litigation.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

**PARTIES**

10. Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

11. Defendant Senior Life Insurance Company ("Senior Life") is a limited liability company organized and existing under the laws of Georgia, with its principal place of business at

3

1 Senior Life Lane, Thomasville, GA 31792. Senior Life offers and sells final expense insurance policies to consumers throughout the United States, including in this judicial district.

12. Defendant Ethan Erich Smith ("Smith") is an individual and, on information and belief, is an employee and/or agent of Senior Life who conducted telemarketing calls on its behalf. He may be served with process at his residence, 1818 Westgate Dr, Fort Wayne, IN 46808.

13. Defendant Caroline Galati ("Galati") is an individual and, on information and belief, is an employee and/or agent of Senior Life who conducted telemarketing calls on its behalf. The address for Defendant Galati is currently unknown. Plaintiff will amend this complaint to include her address once it is ascertained through discovery.

14. Defendant David Carter ("Carter") is an individual and, on information and belief, is an employee and/or agent of Senior Life who conducted telemarketing calls on its behalf. The address for Defendant Carter is currently unknown. Plaintiff will amend this complaint to include his address once it is ascertained through discovery.

15. Plaintiff and all Defendants are "persons" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

16. On or about January 23, 2012, seeking to prevent unwanted telemarketing calls, Plaintiff registered his cellular telephone number, 210-744-9663 ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

17. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

18. Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

4

19. Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

20. Plaintiff has never had any prior business relationship with Senior Life, has never been a customer, and has never granted express written consent to Defendants or any entity acting on their behalf to receive telemarketing calls.

21. Plaintiff has never had any prior business relationship with Senior Life, has never been a customer, and has never granted express written consent to Defendants or any entity acting on their behalf to receive telemarketing calls

22. On information and belief, Senior Life has designed and profits from a deliberate telemarketing business model that is calculated to evade liability under the TCPA. Senior Life does not make the initial cold calls itself. Instead, it contracts with and hires a network of third-party lead generators and telemarketers ("John Does") to make illegal, unsolicited robocalls to consumers nationwide, including to Plaintiff in Texas.

23. Senior Life is aware of its agents' conduct and exercises significant control over the telemarketing process. This control is evidenced by the John Doe callers following a nearly identical telemarketing script on every call, where they solicit "final expense insurance" and ask qualifying questions about the consumer's age, health, and location. Senior Life provides its agents with these specific qualifications and demographic data to ensure they are filtering consumers for Senior Life's products. The primary function of the initial caller is to identify a qualified lead and then seamlessly transfer the consumer to a licensed Senior Life agent, such as Defendants Smith, Galati, or Carter, to complete the sale, making it appear to the consumer that they are speaking with a single entity. The entire telemarketing process is conducted for the sole and exclusive

financial benefit of Senior Life, which reaps the rewards of the illegal calls when its agents close a sale.

24. Senior Life is well aware that its telemarketing campaign violates the TCPA. Senior Life has been the subject of numerous prior Federal lawsuits and countless consumer complaints for the exact same conduct alleged herein namely, making unsolicited robocalls to individuals on the National Do Not Call Registry using third-party agents. Despite this actual and repeated notice, Senior Life has made a conscious business decision not to take any effective action to stop the illegal conduct, as it continues to profit from the violations.

25. The unlawful calls Plaintiff received precisely followed this established, illegal pattern: an initial call from an unknown John Doe agent using an ATDS/prerecord voice and a spoofed number, who, after a series of scripted questions, transferred Plaintiff directly to a licensed Senior Life agent. This demonstrates that the calls to Plaintiff were not an anomaly, but a direct result of Senior Life's ongoing and willful nationwide telemarketing scheme.

26. Beginning on or before January 28, 2025, and continuing through the present, Defendants have targeted Plaintiff with over twenty (20) unsolicited telemarketing calls to Plaintiff's Number. These calls were made for the purpose of selling Senior Life's final expense insurance policies and in blatant disregard of Plaintiff's DNC registration.

27. The calls utilized an automatic telephone dialing system (ATDS) and/or an artificial or pre-recorded voice. This is evidenced by the significant delay and pause of silence after Plaintiff answered, and an audible click before connecting to a representative. Furthermore, the incoming caller identification on every call was illegally "spoofed" to display a fictitious number, concealing the true identity of the caller.

28. On January 28, 2025, at approximately 1:51 PM, Plaintiff received an unsolicited telemarketing call from the spoofed number 210-692-1864, which followed Senior Life's standard

illegal pattern. The call began with a lead generator who transferred the call to a licensed agent who identified himself as Defendant Ethan Erich Smith. During the conversation, Plaintiff explicitly stated his disinterest and unequivocally requested that Defendant Smith add his number to Senior Life's internal do-not-call list to stop the harassing calls. Instead of complying with this request, Defendant Smith became hostile and belligerent. Defendant Smith stated he would "F--- [my] wife" before abruptly terminating the call. This abhorrent conduct was a direct and malicious response to Plaintiff exercising his rights under the TCPA.

29. Another example of one of the many calls was on March 18, 2025, at approximately 2:19 PM, Plaintiff received an unsolicited call from the spoofed number 210-767-4162. Plaintiff was connected with agents identifying themselves as Defendant Caroline Galati and Defendant David Carter. The two defendants engaged in a persistent, tag-team sales effort, passing the phone back and forth to relentlessly pitch a Senior Life final expense policy. Despite Plaintiff's repeated expressions of disinterest and his clear statements that he did not wish to receive the calls.

30. During the calls on January 28 and March 18, and on numerous other occasions, Plaintiff explicitly and unequivocally demanded that Defendants stop contacting him, informed them of his registration with the Federal and Texas Do Not Call Lists, and requested Defendants' place his number on their internal do-not-call list.

31. Defendants ignored every one of these requests. The continued calls after Plaintiff's express demands to stop demonstrates that Defendants' violations were made willfully and/or knowingly.

32. Plaintiff has suffered numerous harms as a result of Defendants' unlawful telemarketing campaign in the form of invasion of privacy, frustration and annoyance, wasted time, anxiety, and depletion of his cellular phone's battery life.

## COUNT I
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c))

33. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 32.

34. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

35. Defendants violated 47 U.S.C. § 227(c) by initiating, or having their agents initiate, more than twenty (20) unsolicited telephone solicitation calls to Plaintiff's cellular telephone number, despite that number having been registered on the National Do Not Call Registry.

36. Defendants' acts as described above were done with malicious, intentional, and willful disregard for Plaintiff's rights under the law. Defendants' knowledge and willfulness are evidenced by their history of prior TCPA lawsuits, their pattern of ignoring Plaintiff's direct and repeated requests to stop calling, and the hostile and obscene conduct of Defendant Smith.

37. As a direct and proximate result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above, entitling Plaintiff to an award of statutory, actual, and treble damages against all Defendants, jointly and severally.

## COUNT II
### Violation of the Telephone Consumer Protection Act
### Failure to Honor Do-Not-Call Request
### (47 C.F.R. § 64.1200(d))

38. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 32.

39. The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to honor consumer requests to cease such solicitations. *See* 47 C.F.R. § 64.1200(d)(6).

40. Specifically, 47 C.F.R. § 64.1200(d)(6) requires a "person or entity making calls for telemarketing purposes" to "maintain a record of a consumer's request not to receive further telemarketing calls" and honor said request "for 5 years from the time the request is made."

41. On January 28, 2025, March 18, 2025, and on numerous other occasions, Plaintiff expressly and unequivocally instructed Defendants to stop contacting him and place his number on their internal do-not-call list. Each of these verbal instructions constituted a legally effective do-not-call request pursuant to 47 C.F.R. § 64.1200(d).

42. Notwithstanding Plaintiff's clear requests, Defendants chose to ignore them and continued to initiate and place telemarketing calls to Plaintiff's Number. Defendant Smith's obscene and hostile response immediately after Plaintiff made such a request on January 28, 2025, is direct evidence of Defendants' intentional, willful, and malicious disregard for Plaintiff's do-not-call rights.

43. As a result of Defendants' failure to implement, maintain, and honor an internal do-not-call list, and/or their intentional decision to disregard Plaintiff's requests, Plaintiff is entitled to statutory, actual, and treble damages against all Defendants, jointly and severally.

### COUNT III
### Violation of the Texas Business and Commerce Code
### (Tex. Bus. & Com. Code § 302.101)

44. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 32.

45. The actions of Defendants, as described herein, constitute "telephone solicitation" as defined under Tex. Bus. & Com. Code § 302.001(7), because they were unsolicited telephone

calls to Plaintiff made for the purpose of inducing Plaintiff to purchase a final expense life insurance policy.

46. Tex. Bus. & Com. Code § 302.101 requires a person to register with the Texas Secretary of State before making telephone solicitations to a consumer in Texas. Upon information and belief, Defendants are not registered as telemarketers in Texas. Plaintiff confirmed Defendant Senior Life Insurance Company's failure to register on July 1, 2025, by searching the official state telemarketer registration database, accessible at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, which produced no record of registration.

47. Defendants' failure to register before placing more than twenty telemarketing calls to Plaintiff constitutes multiple, separate violations of this chapter. Section 302.302(a) of the Texas Business & Commercial Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

48. Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

## COUNT IV
**Violation of the Telephone Consumer Protection Act
ATDS or Pre-Recorded Message
(47 C.F.R. § 64.1200(227(b)(1)(A)(iii))**

49. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 32.

50. The TCPA makes it unlawful for any person to make any call, other than a call made for emergency purposes or with the prior express consent of the called party, using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

10

51. Defendants violated this provision by making over twenty (20) non-emergency calls to Plaintiff's cellular telephone number without his prior express consent.

52. The calls were made using an ATDS and/or an artificial or prerecorded voice. This is evidenced by the consistent, significant delay and pause of silence after Plaintiff answered the calls, the audible click before being connected along the robotic cadence of the initial speakers.

53. As a direct and proximate result of Defendants' willful and knowing violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to statutory damages of up to $1,500 per violation against all Defendants, jointly and severally.

## COUNT IV
### Violation of the Texas Business and Commerce
### (Tex. Bus. & Com. Code § 305)

54. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 32.

55. Texas Business and Commerce Code § 305.053(a) explicitly provides a civil cause of action to any person who receives a communication that violates the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. As previously alleged, Plaintiff's telephone number has been registered on the national "do-not-call" registry since 2012, and it is therefore included on the Texas no-call list protected by this statute.

56. As alleged in detail in Counts I, II, and IV, Defendants violated 47 U.S.C. § 227 by initiating multiple telephone solicitations to Plaintiff's telephone number, despite the number being registered on the National Do Not Call Registry; by failing to honor Plaintiff's direct do-not-call requests; and by using an ATDS or prerecorded voice to call his cellular number without consent.

57. Because Defendants' conduct violated 47 U.S.C. § 227, Plaintiff is entitled to bring this separate cause of action for those same violations under Texas state law.

58. Pursuant to Tex. Bus. & Com. Code § 305.053(b), Plaintiff is entitled to recover the greater of his actual damages or $500 for each and every violation.

59. Furthermore, because Defendants' violations were committed knowingly or intentionally, as evidenced by their placing numerous calls after being told to stop and the malicious conduct of their agents, Plaintiff is entitled to an increased award of damages of up to $1,500 for each violation, as permitted by Tex. Bus. & Com. Code § 305.053(c).

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against Defendants, jointly and severally:

A. For Defendants' violations of the TCPA, 47 U.S.C. § 227(b) and § 227(c), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

B. For Defendants' violations of the Texas Business & Commerce Code § 302.101, award Plaintiff statutory damages of up to $5,000.00 for each and every violation;

C. For Defendants' violations of the Texas Business & Commercial Code § 305, award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was knowing or intentional, thereby increasing the damages to $1,500.00 for each and every violation;

D. Issue a permanent injunction prohibiting Defendants, their agents, and employees from placing any further telephone solicitations to Plaintiff in violation of the TCPA and the Texas Business and Commerce Code;

E. Award Plaintiff all damages available under the TCPA, including statutory damages of $500.00 for each violation of 47 U.S.C. § 227(b), or $1,500.00 for each willful or knowing violation.

F. Award Plaintiff all reasonable attorneys' fees, witness fees, court costs, and other litigation expenses incurred by Plaintiff pursuant to Tex. Bus. & Com. Code § 302.302(d);

G. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

H. Grant any other and further relief, both at law and in equity, that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Mark Anthony Ortega, demands a jury trial in this case.

Dated: July 2, 2025                    Respectfully submitted,

*/s/ M. A. O.*

Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
210) 744-9663